# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FIRST DISTRICT—MARCH TERM, 1884.

## WILLIAM W. CHARLES
### v.
### ERNEST NEIGELSEN.

PRIORITY OF LIEN—CHATTEL MORTGAGE—STABLE KEEPER'S LIEN.
—The lien of a chattel mortgage upon a horse and buggy is superior to the lien of a stable keeper, under the statute (R. S., Chap. 82, § 49), for the keeping of such property where the property remained in the possession of the mortgagor, and was placed in the stable by him subsequently to the mortgage, without the knowledge or consent of the mortgagee.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding. Opinion filed May 20, 1884.

This was an action of replevin to recover possession of a horse, gig and harness, brought by William W. Charles against Ernest Neigelsen, before a justice of the peace, and afterward taken by appeal to the county court. A trial was had in the county court, before the court without a jury, upon an agreed state of facts, resulting in a finding and judgment for the defendant. The facts, as agreed upon, are substantially as follows:

On the 18th day of October, 1883, one H. O. Block was the owner and in possession of said horse, gig and harness, the same being of the value of $75. On that day he executed and delivered to said Charles a good and valid chattel mortgage of said property, to secure the payment of three promissory notes of even date with the mortgage, one for $18.75, due November 18, 1883; one for $17.75, due December 18, 1883; and one for $1, due one year from date. Said mortgage was duly acknowledged and recorded on the day of its date, and in all respects complied with all the provisions of the statute. Said mortgage contained the usual clause authorizing the mortgagor to retain possession of said property, and to use it, at his own expense, until the maturity of the notes; also, that if the mortgagor should fail to pay any of said notes when due, or the mortgagee should feel himself insecure or fear the removal of said property, he, the mortgagor, should have the right to take immediate possession thereof and sell and dispose of the same.

The defendant, at the time of the transactions in question, was the keeper of a public livery stable. On the 23d day of October, 1883, the mortgagor still having the possession of said property under the terms of said mortgage, without the knowledge or consent of the mortgagee, placed said horse, gig and harness in the defendant's stable to be kept by him in his capacity of livery and stable keeper, for said mortgagor, and said property has remained with said defendant from said 23d day of October, 1883, hitherto.

On the 24th day of November, 1883, three days before the commencement of this suit, the plaintiff for the first time learning as to the whereabouts of said property, and one of said notes having become due, and the mortgagee having reasonable grounds for feeling unsafe and insecure, demanded of the defendant the possession of said property, claiming the same under and by virtue of said mortgage, and the defendant then and there refused to deliver up said property or any part thereof to the plaintiff, until the defendant should be paid the sum of $23, which he claimed was due him for the keeping of said mortgaged property subsequent to October

Charles v. Neigelsen.

23, 1883.   It is agreed that said sum is a reasonable charge for said keeping.   The plaintiff declined to pay said claim, and on the 27th day of November, 1883, brought this suit.

The officer failing to seize said property under his writ, the suit was changed to trover and prosecuted as such.

Messrs. Wyman Bros., for appellant; that the lien of the chattel mortgage is prior to that of the stable keeper, cited Sargent v. Usher, 20 Am. R. 208; Jacobs v. Knapp, 50 N. H. 82; Saltus v. Everett, 20 Wendell, 282; 2 Redfield on Railways, 171; Robinson v. Baker, 5 Cushing, 137; Barque Great West v. Oberedorf, 57 Ill. 169; Stevens v. B. & W. R. R. Co., 8 Gray, 262; Clark v. L. & L. R. R. Co., 9 Gray, 231.

Mr. M. R. Harris, for appellee.

Bailey, J.   The plaintiff claims the property described in the replevin writ by virtue of a chattel mortgage executed to him by the owner, and which is admitted to be in all respects valid.   The defendant claims it by virtue of a lien acquired by him, subsequent to the execution of the mortgage, as a stable keeper, under the forty-ninth section of the statute in relation to liens.   The only question in the case is as to which of these parties has the prior or superior lien.

The section of the statute above referred to is as follows: " Stable keepers, and any persons, shall have a lien upon the horses, carriages and harness kept by them for the proper charges due for the keeping thereof and expense bestowed thereon at the request of the owner, or the person having possession thereof."

This statute is recent, and we are not aware that it has as yet received any authoritative exposition.   Our conclusions then must necessarily be largely matter of first impression.

The plaintiff, as the holder of the chattel mortgage, was the general owner of the property, subject to the mortgagor, Block's, right of redemption, the possession for the time being remaining in Block.

The expense of keeping the property so long as Block retained possession, devolved upon him.   This resulted not only from his relations to the property, but also from the express

stipulations of the mortgage. If he saw fit to hire it kept, the liability thereby incurred was his own debt. He was in no sense the plaintiff's agent, nor did he sustain to the plaintiff any relations which authorized him to contract any liability on his behalf. The plaintiff's interest in the property was in no way placed at his disposal or under his control. If he had attempted to sell it he could have given no title; or if to mortgage it, the mortgage would have had no validity. He had an undoubted right to deal with his own interest, and do with that as he pleased, but there his authority terminated. Such being the rights and relations of the parties, independent of the statute, can it be held to have been the intention and effect of the statute to place it in Block's power to hypothecate the plaintiff's title without his knowledge, authority or consent, as security for a liability of his own, and to which the plaintiff was an entire stranger. Certainly, before a construction involving such consequences should be adopted, it should so clearly appear from the language of the statute as to be unavoidable.

The universal and fundamental principle of our law of personal property is, that no one can be divested of his property without his own consent. That no one can transfer to another a better title than he has himself is a maxim alike of the common and the civil law; and therefore, if the owner loses his property, or is robbed of it, or it is sold or pledged without his consent by one who has only a temporary right to use it by hiring or otherwise, or a qualified possession of it for a specific purpose, as for transportation, or for work to be performed on it, the owner can follow and reclaim it in the hands of any person, however innocent. Saltus v. Everett, 20 Wend. 267.

A case closely analogous to the present is that of a common carrier to whom the law gives a lien upon the goods carried, for his reasonable charges for their carriage. The rule now universally established is, that where the carrier receives the goods from a wrong-doer, or one who has no interest in the goods or control over them, he can not insist upon his lien, but must deliver the goods to the true owner on demand.

Robinson v. Baker, 5 Cush. 137; Fitch v. Newberry, 1 Doug. (Mich.) 1.

So, in Gilson v. Gwinn, 107 Mass. 126, it was held that a common carrier who carries a chattel at the sole request and for the sole convenience of a bailee, has no lien thereon for his services as against the owner. The same rule is applied to the lien of a pilot on a vessel for his pilotage, where persons not authorized by the owner took command of the vessel and carried her out of the regular course of the voyage. The Anne, 1 Mason, 512. In these cases it is held that the principle of *caveat emptor* applies to the establishment of liens of this character.

A lien is defined by Bouvier to be, " a hold or claim which one person has upon the property of another as a security for some debt or charge "; and by another authority " a tie, hold or security upon goods or other things which a man has in his custody, till he is paid what is due him." 2 Pet. Dig. 692. Accordingly, in Fitch v. Newberry, *supra,* the court, after discussing the authorities at length, reaches the proposition that to justify a lien upon goods for their freight the relation of debtor and creditor must exist between the owner and the carrier, so that an action at law might be maintained for the payment of the debt sought to be enforced by the lien.

A case more nearly parallel with the present one is that of Sargent v. Usher, 55 N. H. 287. There the owner of two horses, after mortgaging them to the defendant, intrusted them to the plaintiff to be boarded, without the knowledge, acquiescence or consent of the mortgagee. The latter afterward took the horses from the possession of the plaintiff, who thereupon brought trover. The statute of New Hampshire provided that, " Any person to whom any horses, cattle, sheep or other domestic animals shall be intrusted to be pastured or boarded, shall have a lien thereon for all proper charges due for such pasturing or board, until the same shall be paid or tendered." The trial court held that the statute gave the plaintiff a right prior to that of the mortgagee under his mortgage. This decision was reversed on appeal, the

court holding that the rights of the mortgagee were not sub-ject to the lien. Ladd, J., in his opinion, says:

" The idea that a lien may be created by a contract of the possessor of animals for their keeping, the owner being in no way privy to such contract, when no rights whatever, as against the owner, could be conferred or created by a con-tract of sale, seems anomalous, to say the least. Such a thing would, as it seems to me, be a violation of the funda-mental rights of property guaranteed by the constitution; and if the legislature had undertaken by this act to create a lien, to arise on such a state of facts, I think it would be the duty of the court to hold the act, so far, unconstitutional and void. But I do not think any such intention is to be found in the statute. In giving this specific lien, I think the legis-lature used the word in its legal and generally accepted sense, and that implies some privity between the owner, or person having the right of disposing of the goods, and him in whose favor the lien is claimed; and that by 'intrusted' is meant intrusted by the owner or other person having authority to pledge the animals for such a purpose, that is, to suspend the owner's right of possession until the charges are paid."

The language above quoted so aptly applies to this case, that little more need be said. The principle involved in the New Hampshire statute and in ours is substantially identi-cal. We can not suppose that our legislature intended such unjust and inequitable, not to say unconstitutional, results as would follow from the interpretation sought to be put upon our statute, particularly so long as it is susceptible of an in-terpretation which involves no results of that character. It may be admitted that the defendant acquired a lien, but it was a lien only upon such rights as belonged to the party with whom he dealt, and between whom and himself there existed a privity of contract.

A somewhat similar question arose in the case of The Great West v. Oberndorf, 57 Ill. 168. There the question was, whether the lien given by the statute which made steam-boats, etc., navigating the rivers within, and bordering upon the State, liable for debts contracted on account thereof by

the master, etc., for materials, etc., was superior to a prior mortgage upon the vessel, and said question was answered in the negative.

We are of the opinion that in this case the plaintiff's mortgage is superior to the lien claimed by the defendant under the statute, and that the finding and judgment of the court below are contrary to the evidence.

The judgment will therefore be reversed and the cause remanded for a new trial.

Judgment reversed.