McGhee *v.* Edwards.

(*Jackson.* April 11, 1889.)

LIENS. *Of mortgagee superior to livery-stable keepers.* Lien on horse, created by registered mortgage, is superior to statutory lien of livery-stable keeper, who subsequently keeps the horse, without knowledge of the mortgage, and before its maturity, under contract made with mortgagor in possession.

Act construed: Acts 1868–9, Ch. 16.

Code cited: § 2760 (M. & V.); § 1993*a* (T. & S.).

Cases cited and approved: 28 N. Y., 252; 15 Bradw. (Ill.), 17; 55 N. H., 287; 33 N. W. Rep., 482; 30 Hun., 231.

Cited and distinguished: 126 Mass., 294.

Cited and disapproved: 21 Kan., 217–220; 36 Minn., 303.

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

THOMAS H. JACKSON for McGhee.

POSTON & POSTON for Edwards.

FOLKES, J. The only question presented in this record is, has the statutory lien of the livery-stable keeper, given by § 2760 of the Code (M. & V. Ed.), precedence over a mortgage duly registered before

McGhee *v.* Edwards.

the feeding of the horse, for which the lien was claimed.

The case was tried upon an agreed statement of facts, from which it appears that the mortgage was made and registered on December 19, 1887, that the debt secured was not due until March 19, 1888, and that under the terms of the mortgage the mortgageor was allowed to remain in possession of the horse until the maturity of the debt; that while so in possession he boarded the horse with the livery-stable keeper, who had no knowledge, in fact, of the existence of the mortgage; that the mortgagee was ignorant of the fact that the horse was being kept on feed at the livery stable; that after the maturity of his debt, the same being unpaid, the mortgagee brought his action of replevin to recover of the stable keeper the possession of the horse.

The trial judge gave judgment for the defendant, and the plaintiff has appealed.

Upon the question thus presented there is a conflict of opinion to be found in the books, while it has never been decided in this State.

We are to ascertain which of the antagonistic views is more in keeping with sound principles, and the better sustained by authority.

In arriving at the intention of the Legislature in the passage of the Act conferring the stable keeper's lien, we should regard the object and policy of our legislation with reference to the registration laws. The mortgage being registered,

amounts *in law* to actual notice to all parties dealing with the property as fully, to all intents and purposes, as if the fact were placarded on the property itself, so far as the rights of the mortgagee therein are concerned.

To permit the mortgagor to encumber it to its full value, and consequent destruction to the mortgagee, is as fatal to the latter's rights, and defeats as effectually the policy of our registration laws, as if the former were allowed to sell it to a purchaser who was, in fact, ignorant of the mortgage.

Nor are we able to appreciate any considerations of public policy which lead us to extend to the livery-stable keeper any immunity from the fate of all who deal with property, the title to which is matter of record, with which they are not only chargeable with knowledge in law, but with which they can, through the registry laws, acquaint themselves in fact.

This being so, it is not for the Courts to give to the statute in question any such effect, unless constrained to do so by the language or manifest intention of the Legislature.

By our statute the livery-stable keeper's lien is not defined in terms, but it is merely provided that they shall have the same lien given in Article IV. When we turn to Article IV. we find that it relates to pasturage and season of male animals, and the lien given for such services by the Act is declared to be "the same as the innkeeper's lien at common law."

Now, it is true that at common law the inn-keeper had a lien on the horse of a third party brought to him by a stranger and cared for at the inn, and even upon a stolen horse brought there by the guest, but this was, of course, in the absence of notice.

"If the innkeeper knows that the goods brought to the inn by a guest belong to another person, he can have no lien upon them for the guest's personal expenses," says Mr. Jones in § 502 of his work on Liens, citing *Johnson* v. *Hill*, 3 Stark, 172.

Again, if a manufacturer sends a piano to a guest at a hotel for his temporary use, and the hotel keeper knows that it does not belong to the guest, he acquires no lien upon it, citing *Broadway* v. *Granara*, 10 Ex., 417, 425.

So, also, it has been held, that an innkeeper has no lien on a horse placed in his stable by one not a guest, nor by his authority. Thus, in *Binns* v. *Pigot*, 9 C. & P., 208, it was held that if a person is stopped upon suspicion, and his horse is placed at an inn by the police, the innkeeper has no lien on the horse, and if he sells him for his keeping he is liable in trover to the owner. Jones on Liens, § 504.

It is also worthy of note that an innkeeper is bound to receive and entertain one who presents himself as a guest, while a keeper of a livery-stable is not bound to accept and provide for the horse of every customer who may present himself. *Munson* v. *Porter*, 63 Iowa, 453.

It was by reason of this difference that at common law the innkeeper had a lien, while the livery-stable keeper had none.

The lien of the latter exists by statute only, and in construing the statute now before us it is helpful to bear in mind these distinctions as sheding light upon the legislative intention; as also the further fact that our registration laws were unknown to the common law..

Mr. Jones, in his late work on Liens, with the adjudged cases on both sides of the question before him, says: "A chattel mortgage upon a horse is superior to a subsequent lien of a livery-stable keeper where the horse is placed in the stable by the mortgagor, after the making of the mortgage, without the knowledge of the mortgagee," citing therefor *Jackson* v. *Kosseall,* 30 Hun., 231; *Bissell* v. *Pearce,* 28 N. Y., 252; *Charles* v. *Neigelson,* 15 Bradw. (Ill.), 17; *Sargeant* v. *Usher,* 55 N. H., 287; *State Bank* v. *Lowe* (Neb.), 33 N. W. Rep., 482.

The learned author adds: "It is not to be supposed that a statute giving a lien for the keeping of animals was intended to violate fundamental rights of property, by enabling the possessor to create a lien without the consent of the mortgagee, when the person in possession could confer no rights as against the mortgagee by a sale of the animals. The keeper of animals intrusted to him by the mortgagor undoubtedly acquires a lien as against the mortgagor, but it is a lien only upon such interest in them as the mortgagor had at

McGhee *v.* Edwards.

the time, and not a lien as against the mortgagee, between whom and the keeper of the animals there is no privity of contract. The mortgagor, though in possession, is in no sense the mortgagee's agent, nor does he sustain to the mortgagee any relations which authorize him to contract any liability on his behalf. The statute cannot be construed to authorize the mortgagor to subject the mortgagee's interest to a lien without his knowledge or consent, as security for a liability of the mortgagor, unless such a construction clearly appears from the language of the statute to be unavoidable."

As stated in the outset, authorities are to be found holding a contrary view. See *Case* v. *Allen,* 21 Kan., 217–220; *Smith* v. *Stevens,* 36 Minn., 303, which were cases where an agister's lien was held superior to an older registered mortgage. But their reasoning does not commend them to us sufficiently to shake our conviction that the other view is the sounder and better.

Nor do we think that the rule which prevails with reference to railroad mortgages, that claims for fuel, rails, cross-ties, labor, and repairs take precedence over such mortgage, furnishes any analogy to the case at bar. They rest upon the principle or presumption of implied agency in the company to contract such liabilities, and discharge them out of the earnings of the mortgaged property, as contemplated by the mortgagee, and necessary to the operation and preservation of the property.

We do not mean to say that an implied agency

might not arise out of the terms upon which the mortgagor was left in possession, which would authorize the mortgagor to contract with the stable keeper a lien that would, in the particular case, be superior to the claim of the mortgagee, which seems to have been the case in *Hammonds* v. *Danielson*, 126 Mass., 294.

But we see nothing in the agreed statement of facts in the case at bar that creates such an agency, and in the absence of such an agency, or some other authorization or recognition by the mortgagee, we hold his claim superior to that of the stable keeper, contracted with the mortgagor subsequent to the registration of the mortgage.

Let the judgment be reversed, and the case having been tried without a jury, judgment will be entered here for the plaintiff.