## J. E. HOWARD *et al.* v. W. E. BURNS.

1. TROVER—*Action, Sustained.* A mortgagee entitled to the possession of personal property covered by his mortgage may maintain trover against a third party, who has converted the same, without first obtaining a judgment against the mortgagor, and without making him a party to the action.

2. ———— *No Agister's Lien.* A party wrongfully converting stock to his use is not entitled to an agister's lien for feeding and caring for the same as against one who is entitled to the possession thereof.

*Error from Harvey District Court.*

TROVER. The facts are stated in the opinion.

*Ady & Nicholson,* for plaintiffs in error.

*Vandeveer & Martin,* for defendant in error.

Opinion by STRANG, C.: This was an action of trover, to recover damages for the conversion of certain sheep, begun in the district court of Harvey county on the 18th day of Feb-

ruary, 1886. The right of the plaintiff below to recover was based on certain chattel mortgages which had become absolute, and an unsuccessful demand for the possession of the sheep. The defendants answered: First, a general denial; second, superior claims in themselves and third parties, whom they ask to have made parties; third, claim an agister's lien; to which plaintiff's reply was a general denial. On the 14th day of May, 1887, the case was tried by the court and a jury, resulting in a verdict and judgment for the plaintiff for $1,922.60. A motion for a new trial followed, which was overruled; to which ruling the defendants excepted, and file their case-made in this court, asking a reversal of the judgment of the district court.

February 13, 1885, the plaintiff below was the owner of 1,500 sheep, which on that day he sold to H. C. Reeder for $3,000, taking Reeder's notes therefor in the sum of $1,500 each, the last note due to run ten months; and to secure the payment of said notes he took a chattel mortgage on the sheep sold by him to Reeder. Said mortgage was placed of record in Reno county February 20, 1885, and in Harvey county October 24, 1885. January 2, 1885, Reeder gave to the Bank of Burrton a mortgage on 200 head of sheep, with some other property, to secure the payment of a debt of $1,622.10. This mortgage was recorded January 21, 1885. January 19, 1885, Reeder gave to J. E. Howard a mortgage on 3,000 sheep to secure the payment of a note for $3,000. This was recorded March 28, 1885. July 10, 1885, Reeder gave to the First National Bank of Newton a mortgage on 600 yearling sheep, mixed wethers and ewes, to secure a debt of $500. This mortgage was recorded July 11, 1885. Defendants below took possession of all the sheep Reeder had on the 8th day of September, 1885, and refused to return to the plaintiff the sheep covered by his said mortgage; whereupon the plaintiff brought this suit. The first question raised by the plaintiffs in error is, that the petition of the plaintiff below does not state a cause of action; that Reeder, the maker of the notes and mortgage under which the plaintiff below

claims, was not a party to the suit; that the indebtedness against him in favor of the plaintiff below had never been judicially ascertained, and that an action will not lie on behalf of the plaintiff against the defendants below until the indebtedness between the mortgagee, the plaintiff below, and Reeder, the mortgagor, is liquidated, without making Reeder a party thereto. We do not think this position is tenable. This is an action of trover, an action sounding in tort. The gist of the action is the conversion, the wrongful act of the defendants, and not the right of the plaintiff to recover anything of Reeder. While the plaintiff's right to the possession of the sheep flows from his mortgage thereon and the breach of its conditions, yet, it is wholly unnecessary to ascertain the

1. Trover—action, sustained.

amount of the indebtedness between plaintiff and Reeder before bringing suit against the defendants, because by this breach of the conditions of his mortgage by Reeder the plaintiff at once became entitled to the possession of the sheep; and, being entitled to the possession, he may bring his action to recover the possession as an action of replevin, or he may bring his action to recover damages for the wrong done him by taking and withholding from him the possession, as an action of trover or an action of trespass. This suit was not brought by the plaintiff below against the defendants below to recover from the defendants his debt against Reeder. It was to recover damages of the defendants for their wrong done the plaintiff in taking and withholding from him the possession of the sheep which he was entitled to; and the only relation the indebtedness between the plaintiff and Reeder sustains to this suit is, that the law has declared the measure of damages between the plaintiff and the defendants to be the amount due the plaintiff on his debt secured by the mortgage from Reeder. The plaintiff's right to maintain this action is thus founded in reason, and it is supported by an unbroken line of authorities, so far as we have been able to discover. In *Smith v. Konst*, 50 Wis., Mr. Justice Taylor says:

"The respondent, as mortgagee after condition broken,

35 — 44 KAS.

had the legal title to the property, and the right to the possession thereof, against everybody; and his right to recover against every person unlawfully converting the same in hostility to his rights as mortgagee was just as perfect as if he had been the absolute owner thereof; the only difference being that, as against persons claiming under the mortgagor, or his assignees, his right to damages would be limited to the amount due upon his mortgage."

In *Corbin v. Kincaid*, 33 Kas. 649, 652, Mr. Justice VALENTINE says:

"The defendant below had actual knowledge of the plaintiff's mortgage and of his rights, and took possession of the property with such knowledge, claiming to have the prior right thereto, in violation of the plaintiff's rights; and all this transpired within less than one year after the execution of the plaintiff's mortgage, and at a time when no one would claim, or even pretend, that any renewal affidavit was necessary. A cause of action in replevin, or for conversion, then arose in favor of the plaintiff and against the defendant, and that cause of action was not satisfied, annulled or barred by any failure on the part of the plaintiff to afterward file a renewal affidavit."

"A second mortgagee of a chattel who takes the same from the possession of the mortgagor and sells it and receives the full consideration of the sale, without regard to the rights of the senior mortgagee, is liable to the latter in an action for the conversion of the chattel."

See also *Lowe v. Wing*, 56 Wis. 31; *Bailey v. Godfrey*, 54 Ill. 507; 12 Wis. 245; 11 id. 375; 70 Ill. 302; 20 Wend. 19; 73 Mo. 672; 42 Mich. 12; 2 Speers, 181.

Reeder owned a lot of sheep, and gave the Bank of Burrton a mortgage on sheep and other personal property for $1,622.10 to secure so much alleged indebtedness. Afterward he gave a mortgage to J. E. Howard on 3,000 sheep to secure an alleged indebtedness of $3,000. Afterward Reeder purchased 1,500 sheep of Burns, and gave Burns a mortgage thereon to secure the purchase-money, $3,000. The mortgages to the Bank of Burrton and to J. E. Howard were given in January, 1885 — the former on the 2d and the latter on the 19th. The mortgage to Burns was given on the 13th

of February, 1885. Of course the mortgages to the Burrton bank and J. E. Howard could not be a lien on the sheep contained in the Burns mortgage, because they did not cover the Burns sheep. Reeder did not have the Burns sheep at the time he made the mortgages to the Burrton bank and Howard. The mortgage to the First National Bank of Newton was made by Reeder July 10, 1885, but it recites that the sheep covered by it were the same sheep mortgaged by Reeder to Gorman October 28, 1884. So the mortgage to the Newton bank did not cover any of the Burns sheep, and therefore could not be a lien thereon, no matter when recorded. So far then as these mortgages were concerned, only the Burns mortgage was a lien on the Burns sheep. It is admitted that the defendants took all the sheep Reeder had on September 8, 1885, into their possession.

The condition of the Burns mortgage was broken, and Burns thereby became entitled to the possession of the sheep covered by his mortgage in the hands of Howard and the Bank of Burrton, and if they refused to surrender them to him, he could, as we have seen, maintain his action to recover damages for the conversion of them. But it is alleged that at the time when the sheep were taken possession of by the Burrton bank and Howard, they were sick and lame, and they cared for them, doctored and fed them, and that they were entitled to a lien on them therefor. We do not think that is true. There is nothing in our statutes that gives a lien on stock under such circumstances. The defendants took the sheep from Reeder in defiance of the rights of the plaintiff, and held them all the time adversely to Burns and his rights. They took them under claim of right under chattel mortgages, which as against Reeder under our statutes gave them the title thereto, and in fact they claimed the sheep. If the sheep belonged to them they could not have a lien thereon for feeding and doctoring them, and if the sheep were not theirs, but belonged to Burns under his mortgage, and they took them without his consent, thus depriving him of his right of pos-

2. No agister's lien. session against his will, they were guilty of a tort as to Burns which could not be the basis of any such relation between themselves and Burns as would give them the right to a lien thereon. The fact that under the law Burns could maintain trover for the conversion of the sheep excludes the idea that defendants could have a lien upon the sheep for feeding and doctoring them.

We have examined the alleged errors growing out of the admission of evidence, and do not think any material error was therein committed. Burns only testified as to the value of fat sheep. He said he had noticed the quotations of such sheep in the Kansas City market, and then stated what the market price of fat sheep was in Kansas City. In view of the fact that it was proved there was no market value for such sheep at home, his evidence as to the market prices at Kansas City was probably admissible. But as it seems to be conceded that there were no fat sheep, the evidence of Burns thus given was not material. And the same may be said of Reeder's statement as to what he was told about the value at Kansas City. The claim that Burns's mortgage was void because not immediately filed in Harvey county, is not good. (33 Kas. 649; 20 Ohio, 161.) And besides, defendants had actual knowledge of plaintiff's mortgage all the while. This brings us to the last question: Was the verdict so excessive that it must have been given under the influence of passion and prejudice, and therefore ought it to be set aside? The plaintiff went to the county of the defendants to bring his suit, and there it was tried. Burns says there were seven or eight hundred of his sheep when taken by defendants. Rodgers says there were 500 in February, 1886. Defendants assert many of the sheep had died before that. Just how many of Burns's sheep were taken by Howard and the bank, and what they were worth, we do not know. But the jury having considered all the evidence on this subject, and their finding thereon having been approved by the trial court, and there being some evidence upon which to base their finding, this court will not set it aside.

We have examined the instructions, and fail to find any error therein. And we also believe they are sufficiently full, and cover all the questions involved in the case. We therefore recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.