No. 14,608.

HANCH *v.* RIPLEY.

LIENS.—*Agister's Lien.—Prior Recorded Mortgage.*—The lien created by statute (section 5292, R. S. 1881) in favor of an agister is subordinate to the lien of a prior recorded mortgage.

From the Marion Superior Court.

*A. C. Ayres, E. A. Brown* and *L. M. Harvey*, for appellant.

*H. J. Everett*, for appellee.

BERKSHIRE, J.—The complaint contains two paragraphs, but as the judgment rests upon the first we need not notice the second.

The appellee was the plaintiff in the trial court and alleges that he was the owner, by virtue of a chattel mortgage, which was duly recorded, of two sorrel horses, and that the appellant wrongfully took possession of said horses, disposed of them and converted the proceeds thereof to his own use. The case was put at issue and tried, and a judgment rendered for the appellee. The facts presented by the record, so far as we need refer thereto, are as follows:

A Mrs. Ainsworth was the owner of the horses, together with some other property; she executed a chattel mortgage on the property to secure a note executed by her to the appellee for the sum of $500.

The mortgage was duly recorded, and by its terms the mortgagor was to retain possession of the property until maturity of the note, and in case of default in payment of the debt at maturity the appellee, as such mortgagee, was entitled to the possession of the property. After the execution of the mortgage, the husband of the mortgagor contracted with the appellant, an agister, to feed and care for said horses, and placed them in his possession for that purpose; afterwards the appellant, not having been paid for services and expense in keeping and caring for said horses, advertised the same for sale at public auction and became the purchaser for the amount which he claimed to be due to him; and thereafter he sold and disposed of said horses to other parties.

There is some question raised as to whether or not there was a redemption from said sale by virtue of an arrangement made between the husband of Mrs. Ainsworth and the appellant, but in view of the conclusions to which we have arrived whether there was a redemption or not does not become material.

The point is also made that under the evidence and the issues in the case, it became a question of fact for the jury whether or not the horses were delivered to the appellant to feed and care for, with the knowledge and consent of the appellee; but as there is an entire failure of evidence as to any such knowledge or consent no such question is presented for our consideration. The one single question which the record presents is, who had the superior lien, the mortgagee or the agister?

We have the following statute in regard to the recording of chattel mortgages:

"Section 4913. No assignment of goods, by way of mort-

gage, shall be valid against any other person than the parties thereto, when such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be acknowledged, as provided in case of deeds of conveyance, and recorded in the recorder's office of the county where the mortgagor resides, within ten days after the execution thereof."

At common law an agister had no lien. *Grinnell* v. *Cook*, 3 Hill, 485 (38 Am. Dec. 663); *Bissell* v. *Pearce*, 28 N. Y. 252; 13 Am. & Eng. Encyc. of Law, 943, and citations in notes 2 and 3.

Nearly all of the States have statutes recognizing the right of livery stable keepers and agisters to a lien on horses and other animals for their keep, and necessarily the extent and character of the lien depend upon the construction to be given to the statute creating it. Our statute is as follows:

"Section 5292. The keepers of livery stables and all others engaged in feeding horses, cattle, and hogs, and other live stock shall have a lien upon such property for the feed and care bestowed by them upon the same, and shall have the same rights and remedies as are provided for those persons heretofore having, by law, such lien in the act to which this is supplemental."

It is not necessary to call attention to the original act, as it will throw no light upon the question under consideration. The language employed in the statute is general in its character. It does not seem to have been the intention of the Legislature to do more than to create a lien in favor of the classes of persons named; and not having expressed any intention of giving to these persons superiority over other lien-holders, we think it is but fair to presume that it was the intention of the Legislature to place them on a common plane with other lien-holders, the first in the order of time having superiority.

As the agister's lien depends alone upon the statute, it can have no greater force than the statute gives it, and as the

Legislature has, as we have said, manifested no intention of giving to it superiority over other liens, it can have none. And we may say in this connection that we can imagine no good reason why superiority should exist in favor of an agister over other lien-holders. The lien of each rests upon a valuable consideration arising out of contract, express or implied, unless it may be the general lien which the law creates when an execution is in the hands of a ministerial officer, the effect of which, as against an agister's lien, we are not now called upon to consider.

The appellee loaned his money in good faith and took a note and a chattel mortgage to secure the same; he, within the time allowed by law, had his mortgage recorded; the appellant, with notice (for he was bound to take notice) of the appellee's mortgage, under a contract with one not the owner of the property, but at most her agent, furnished his feed and services (which was but money), whereby the mortgagor became indebted to him, and to secure which indebtedness the law created a lien. Not only was the record of the mortgage notice to the appellant of the appellee's lien, but notice also (if that were important) as to whom the property belonged. Had the appellant had actual notice of the appellee's mortgage, and in the face of such notice had he taken the property to keep, what plausibility would there be in his claim to superiority of lien? What equity would there be in such a claim? None whatever.

With the record before him (and constructively it was before him), the notice came with the same force to the appellant as if he had had actual notice, and was as effectual to him as an agister as to other classes of junior lien-holders. But if it were necessary we might add further, that one of the conditions in the appellee's mortgage was that the mortgagor should not remove the pledged property from where it was at the time the mortgage was executed, except by the consent of the mortgagee, and of this the appellant had notice.

We concede that there is some conflict of authority as to

the construction to be placed upon statutes creating liens in favor of agisters, as to whether these liens should have superiority over other specific liens senior thereto. The decisions, however, in some of the cases which seem to be adverse to our conclusion were influenced by special circumstances. See *Vose* v. *Whitney,* 7 Mont. 385 ; *Smith* v. *Stevens,* 36 Minn. 303.

The last case turned upon the express language of the statute of Minnesota, the statute expressly providing that the keeping at the request of the *legal possessor* shall be sufficient to create the lien ; the court holding that the mortgagee took his mortgage with a full knowledge that under the law the mortgagor might create an agister's lien against it superior to his mortgage, and hence was bound thereby. See *Hammond* v. *Danielson,* 126 Mass. 294.

But the weight of authority and, as we think, the better reasoned cases, are in accord with the conclusion to which we have arrived. See *McGhee* v. *Edwards,* 87 Tenn. 506 ; *Jackson* v. *Kasseall,* 30 Hun, 231 ; *Bissell* v. *Pearce, supra ; Charles* v. *Neigelsen,* 15 Ill. App. 17 ; *Sargent* v. *Usher,* 55 N. H. 287 ; *State Bank* v. *Lowe,* 22 Neb. 68 ; *Easter* v. *Goyne,* 51 Ark. 222 ; Jones Liens, sections 691–3 ; Jones Mortgages, section 472.

The lien which exists in favor of one making repairs upon a vessel rests upon other principles than does a statutory lien in favor of an agister, and hence we do not think the authorities cited as to the effect of such liens are in point.

In *Easter* v. *Goyne, supra,* it is said : " The statute under consideration does not evince the intention to give preference to the statutory lien, and in the absence of a legislative intent to that effect, the courts have not, unless in exceptional instances, permitted the lien created by the statute to become paramount to a prior recorded mortgage. * * * In accordance with this rule it has been decided by this court that a mechanic's lien is subordinate to a prior recorded mortgage." And so it has been held by this court as to a

mechanic's lien. *McCrisaken* v. *Osweiler*, 70 Ind. 131; *Close* v. *Hunt*, 8 Blackf. 254; *Troth* v. *Hunt*, 8 Blackf. 580.

The case of *Case* v. *Allin*, 21 Kan. 217, being, as we think, against the great weight of authority, and in principle against our own cases cited above, we can not give to it the weight that it would otherwise be entitled to receive.

We find no error in the record.

Judgment affirmed, with costs.

Filed Dec. 16, 1890; petition for a rehearing overruled Mar. 20, 1891.