[No. 3868.]

ELLISON, ADMR., v. TUCKERMAN, RECEIVER, ET AL.

1. CHATTEL MORTGAGE—*Lien.* A chattel mortgage conforming to the statute and duly recorded, confers a lien paramount to any subsequent lien created by any contract of any kind to which the mortgagee is not a party.

2. —— *Duty of Mortgagee.* Mortgagee of chattels, who, being advised that a receiver has been appointed of the properties of the mortgagor, seasonably notifies him of the mortgage, and prohibits him from assuming possession of the chattels, or incurring any expense in relation thereto, is not required to take further action or make further inquiry. He is not responsible to one to whom the receiver afterwards entrusts the animals for maintenance.

3. —— *Extension—When Mortgagee Must Assume Possession.* Where a chattel mortgage is extended by proceeding in conformity with the statute, the mortgagee has, at the expiration of the period of extension, the same rights in respect to foreclosure, as at the original maturity of the debt, including a reasonable time in which to take possession of the chattels.

The mortgagee residing at a great distance from the place where the mortgaged animals were unlawfully detained, demanded possession thereof only four days after the lapse of the period of extension. Held in time.

*Semble*, that the statute granting thirty days to the mortgagee in which to assume possession of the chattels, has no application where the mortgage has been extended. The mortgagee must assume possession within a reasonable time after the expiration of the extension.

4. AGISTER—*Lien of.* The lien of an agister is purely statutory (Rev. Stat., sec. 4013) and is created only by contract express or implied with the owner of some interest in the live stock, and extends only to such interest. The lien created by a prior chattel mortgage is not subordinated to that of an agister who receives the animals without the knowledge and consent of the mortgagor, save, perhaps, in the case of some necessity or emergency calling for an exception to the rule.

The evidence held not to present such necessity or emergency.

5. STATUTES—*Construction.* A statute will not be so construed as to occasion injustice if it is susceptible of another interpretation.

6. CONSTITUTIONAL LAW—*Retrospective Statute.* A statute providing that "any chattel mortgage * * * which has been duly admitted to record * * * may be extended" by filing in the office where the

mortgage is of record a sworn statement of the mortgagee, showing the amount remaining due, and consenting to such extension (Rev. Stat., sec. 520) applies to mortgages already of record, as well as those subsequently executed.

7. JUDGMENT—*Upon Whom Binding.* An order of the district court appointing a receiver, and directing him to assume possession of certain live stock is without effect as against a mortgagee thereof who is not a party to the proceeding.

*Error to Weld District Court.* HON. HARRY P. GAMBLE, Judge.

Mr. H. E. CHURCHILL, for plaintiff in error.

Mr. ROBERT S. ELLISON, *pro se.*

Mr. CHARLES E. SOUTHARD, for defendant in error, Tuckerman.

Mr. H. N. HAYNES, for defendant in error, Day.

KING, J., delivered the opinion of the court.

The writ of error herein was issued to the district court of Weld county to review a judgment of said court rendered in favor of the defendants, in the sum of $792.40, upon the following facts:

April 10th, 1907, Joseph E. Painter purchased from S. D. McDaniel fifty-one head of thoroughbred Hereford cows with twenty calves by their sides, for the agreed price of $2,860, in payment of which he gave his two promissory notes, one for the sum of $2,800 payable in six months, and one for $60 payable in one year after date, and, to secure the same, gave his chattel mortgage upon all of said stock. The mortgage was duly recorded in Weld county, Colorado, April 12th, 1907. September of that year McDaniel died, and plaintiff Ellison, a resident of Colorado Springs, El Paso county, was, by the county court of that county, appointed administrator of the estate. Prior to maturity, payments were made on the notes, reducing the principal to about $2,200. At the

maturity of the last note the administrator extended said chattel mortgage until and including the 15th day of February, 1909, by sworn statement filed in Weld county, in conformity with the statute. July 6th, 1908, in a suit pending in the district court of Weld county between said Painter and one Wilcox as partners, in which Wilcox sued his partner Painter for an accounting of partnership matters, and in which the stock mentioned was claimed to be partnership property, defendant, Tuckerman, was appointed receiver, and, by the court, directed to take possession of this and other stock, as receiver, and to feed and care for the same, and also directed to notify the mortgagees of such order. About July 11th the receiver sent written notice of this order to the plaintiff at Colorado Springs, and on the 15th plaintiff answered, notifying the receiver of his mortgage, and further warning him not to interfere with the stock or incur any expense with respect thereto. This notice was received by Tuckerman in due course of mail, but in the meantime, and on the 13th of July, he had taken possession of the stock and placed it in a pasture belonging to the defendant Day, under a contract to pasture the same for an agreed price. Day knew of the chattel mortgage, had read it, discussed it, and took the stock with such knowledge, after assurance from the receiver that he would be paid. Most of the stock was retained by Day until taken from him under writ of replevin, as hereinafter stated; the rest was kept by the receiver. Plaintiff was not notified that the receiver had taken possession of the stock until he attempted to foreclose the mortgage. On February 19th, four days after the date to which the mortgage was extended, the administrator demanded possession of the cattle, but such possession was refused by the defendants except upon condition that they be paid for pasturage and feeding, approximating the amount of the judgment. By permission of the district court plaintiff brought re-

plevin against the receiver and Day for possession of the stock, or its value, and, under proper writ, took the stock, and thereafter sold it under the terms of the chattel mortgage for an amount less than the mortgage debt. At the time the stock was taken by the receiver it was in the possession of Painter, upon a ranch which belonged to him, or to the co-partnership, and was removed to another pasture because it was better.

Plaintiff in error contends that his mortgage was a first and prior lien; that he had a reasonable time after maturity of the mortgage as extended in which to take possession, particularly in view of the fact that defendants had actual notice of his lien when they received the stock. He also contends that under the statute he had thirty days after maturity of said mortgage as extended in which to take possession, and that thirty days is a reasonable time. Defendants in error contend that the 15th day of February, the day fixed as the date to which the extension of the lien was limited, marked the life of the lien, and that no time thereafter is allowed in which to take possession; and, further, that the agister's lien, under the circumstances, was never subordinate to that of the chattel mortgage, but was always a prior lien, and further assert equities in their favor. The attorney for the defendant Tuckerman also makes the contention that the consent of the mortgagee for the defendants to feed the stock is implied from the facts in evidence; that the extension of the mortgage was illegal and of no effect, because the present law permitting extension by affidavit did not go into effect until after the execution and delivery of the chattel mortgage.

1. By virtue of the contractual provisions contained in the chattel mortgage, together with the provisions of the statute permitting the mortgagor to retain possession of the mortgaged chattels until maturity of the mortgage, in case a stipulation to that effect is incorporated in the

mortgage and that instrument duly acknowledged and recorded, a lien, both contractual and statutory, is created, which is and remains prior and paramount to any subsequent lien created by contract of any kind to which the mortgagee is not a party or to which he does not give consent, actual or implied. The mortgagor alone cannot bind the property nor make it liable for liens for any purpose except as to his equity or interest therein in excess of the mortgage debt.

2. The agister's lien, the benefit of which is claimed by the defendants, is purely a statutory lien; it did not exist at common law. But we think it does not attach in the absence of relations or arrangements which amount to a contract, express or implied, between the agister and the owner of the property or of some interest therein, and then only to the extent of the interest of the person by whom the property is "entrusted" to the keeping of the agister.—*Auld v. Travis*, 5 Colo. App., 535, 541, 39 Pac., 357; *Hammond v. Danielson*, 126 Mass., 294. Upon the question as to whether an agister's statutory lien is superior to a prior chattel mortgage lien, there is conflict of opinion, and courts of high repute have reached diverse conclusions. But we think the better rule is that the holder of a valid chattel mortgage, duly acknowledged and recorded, cannot be divested of his lien or subordinated therein to the claim or lien of an agister who takes the property at the instance or request of a mortgagor, or any other person, without the knowledge and consent of the mortgagee, except, perhaps, in case of necessity or some emergency taking it out of the rule, which does not here exist. We are satisfied with the reasoning and adopt the rule of the courts as found in the following decisions: *Sargent v. Usher*, 55 N. H., 287, 20 Am. Rep., 208; *Charles v. Neigelsen*, 15 Ill. App., 17; *McGhee v. Edwards*, 87 Tenn., 506, 11 S. W., 316, 3 L. R. A., 654; *Hanch v. Ripley*, 127 Ind., 151, 26 N. E., 70, 11 L. R. A., 61; *Everett*

*v. Barse Live Stock Comm. Co.,* 115 Mo. App:, 482, 88 S.
W., 165; *National Bank v. Jones,* 18 Okla., 555, 91 Pac.,
191, 12 L. R. A., 310, 11 Ann. Cas., 1041; *Wall et al. v.
Garrison et al.,* 11 Colo., 515, 19 Pac., 469. Numerous
cases in support of this view are collated in a case note to
*National Bank v. Jones, supra,* in addition to which we
cite 1 Jones on Liens, sec. 691; 19 Am. & Eng. Enc. of
Law (2nd ed.), p. 438. Counsel for defendants frankly
admit that such is the majority rule in the courts of the
United States, but insist upon the exceptions to that rule,
and the benefit of the particular conditions found in the
instant case. *Case v. Allen,* 21 Kan., 217, 36 Am. Rep.,
425, and *Smith v. Stevens,* 36 Minn., 303, 31 N. W., 55,
cited and relied on by defendants, were cases in which an
agister's lien was held superior to a prior recorded mort-
gage lien, but the reasoning does not change nor shake
our conviction that the other is the sounder and the bet-
ter rule. As was well said by Berkshire, J., in *Hanch v.
Ripley, supra,* in construing the statute of Indiana, ''The
language employed in the statute is general in its charac-
ter. It does not seem to have been the intention of the
legislature to do more than to create a lien in favor of the
classes of persons named; and, not having expressed any
intention of giving to these persons superiority over other
lienholders, we think it is but fair to presume that it was
the intention of the legislature to place them on a common
plane with other lienholders, the first in the order of time
having superiority. As the agister's lien depends alone
upon the statute it can have no greater force than the
statute gives it; and, as the legislature have, as we have
said, manifested no intention of giving to it superiority
over other liens, it can have none.'' If the legislature,
in passing the lien law now under consideration, intended
to give superiority to the subsequent agister's lien, we
would be disposed to accept the view taken by the supreme
court of New Hampshire in *Sargent v. Usher, supra,*

quoted with approval in *Charles v. Heigelsen, supra,* as follows: ''The idea that a lien may be created by a contract of the possessor of animals for their keeping, the owner being in no way privy to such contract, when no rights whatever, as against the owner, could be conferred or created by a contract of sale, seems anomalous, to say the least. Such a thing would, as it seems to me, be a violation of the fundamental rights of property guaranteed by the constitution; and, if the legislature had undertaken by this act to create a lien, to arise on such a state of facts, I think it would be the duty of the court to hold the act, so far, unconstitutional and void. But I do not think any such intention is to be found in the statute. In giving this specific lien, I think the legislature used the word in its legal and generally accepted sense, and that implies some privity between the owner, or person having the right of disposing of the goods, and him in whose favor the lien is claimed; and that by 'entrusted' is meant entrusted by the owner or other person having authority to pledge the animals for such a purpose, that is, to suspend the owner's right of possession until the charges are paid.'' In *McGhee v. Edwards, supra,* it is said in substance that to permit the mortgagor to encumber the property to its full value, and consequent destruction to the mortgagee, is as fatal to the latter's rights, and defeats as effectually the policy of our registration laws, as if the mortgagor were allowed to sell the property to a purchaser who was in fact ignorant of the mortgage, and thus defeat the lien of the mortgagee.

The language above quoted so aptly applies to this case that little more need be said. We shall not assume that our legislature intended such unjust and inequitable, if not unconstitutional, results as would follow from the interpretation sought to be put upon our statute, so long as it is susceptible of the interpretation which we have given it. As to the defendants, the lien which they ac-

quired attached only to such rights and interest as belonged to the mortgagor, Painter, or the co-partners, at the instance of whom the property was seized and cared for by the defendants.

3. By reason of the express notice given by the mortgagee herein to the defendants, warning them not to incur any expense on account of the mortgaged stock, his consent thereto cannot be implied. This conclusion is strengthened and fortified by the further fact that plaintiff had no knowledge or notice that, notwithstanding his warning, defendants had taken possession of, or were feeding the stock. He was under no obligation, legal or equitable, after such warning, to make further inquiry.

4. It is contended by defendants that under the act permitting extension of chattel mortgages by affidavit of the mortgagee (sec. 520, Rev. Stats. '08), the rights of junior lienors attach eo' instante of the expiration of the time mentioned in the affidavit or sworn statement. With this contention we do not agree. The act of April 9th, 1907, Session Laws, '07, p. 258, Rev. Stats., '08, sec. 520, provides that the lien of a recorded chattel mortgage may, within thirty days after the maturity of the debt secured thereby, be extended by the mortgagee by filing a sworn statement showing certain matters including the period during which he consents to extend the mortgage, "and thereupon the lien of the mortgage shall be extended for such designated period. At the expiration of said extended period said mortgage, and the lien thereof, may be again extended for another period, not exceeding two years, with like effect," and in the same manner, until the indebtedness secured shall have been paid, or barred by the statute of limitations. We think this statute, reasonably construed, means that upon compliance with its requirements, the maturity of the mortgage is extended from the date given therein as the maturity of the debt to the end of the extended period, and that thereupon, in

foreclosing his security, the mortgagee has all the rights theretofore recognized upon foreclosure at maturity of the debt, including a *reasonable* time in which to take or demand possession, but excepting, perhaps, the statutory right to thirty days after maturity within which to take possession of the chattels.—Rev. Stats., '08, sec. 518. This provision seems to be limited to thirty days after maturity of the debt, and it is plain that the extension of the mortgage by this method does not affect the maturity of the debt. Some act on the part of the mortgagor would be necessary to extend the debt, and thus affect the running of the statute of limitations. But it is not necessary to rely upon this provision of the statute. The right to a reasonable time after maturity of the mortgage within which to take possession has always been recognized by the courts of this state.—*Stanley v. Coal Co.,* 24 Colo., 103, 49 Pac., 35; *Cassell v. Deisher,* 39 Colo., 367, 372, 89 Pac., 773; *Bradford v. Roberts,* 46 Colo., 330, 104 Pac., 391; *Babbitt v. Bank,* 50 Colo., 258, 108 Pac., 1003. Since the adoption of section 518, and because of it, thirty days after maturity of the debt have been regarded as constituting a reasonable time in which to act. Prior thereto the time varied from a few days to several weeks, according to circumstances. In this case the mortgagee resided a long distance from the place where the cattle were kept. He had no knowledge of any exigency demanding unusual diligence. He acted in perfectly good faith. The situation of defendants was not changed nor their interests prejudiced by the delay. Therefore, the demand for possession made by plaintiff February 19th (only four days after maturity of the mortgage as extended), upon defendants, who at the time of such maturity were, and for a long time prior thereto had been, wrongfully in possession of the chattels, as against the plaintiff, mortgagee, if necessary at all, was manifestly made within a reasonable time and preserved the rights of the plaintiff. In so far

as this view conflicts with *Rosenbaum Bros. & Co. v. Ryan Bros. Co.*, 33 Mont., 424, 84 Pac., 1120, we are not in accord with that decision.

5. The specific provision of the statute relied on, providing for an extension of chattel mortgage liens by filing a sworn statement, was passed April 9th, 1907, and took effect ninety days thereafter, subsequent to the execution, delivery and recording of the chattel mortgage, but before the extension was made. It is purely a remedial statute amendatory of an act theretofore existing, and applied to mortgages in force at the time it became effective as well as to those subsequently executed, and is not obnoxious to the constitutional inhibition against retrospective legislation.—*Aultman & Taylor Machinery Co. v. Fish et al.*, 120 Ill. App., 314.

Defendants make a strong appeal to the equities alleged to exist in their favor under the facts of the case. This is not a case of equitable cognizance. Plaintiff may well stand upon his strict legal rights. However, we think the equities are with the plaintiff. Defendant Day, who holds the larger part of the claim for feed and pasturage, knew of the mortgage, read and discussed it before accepting the stock, and after assurance by his co-defendant that he would be paid. Fair warning had been given by the plaintiff. The order of the court directing the receiver to take charge of and feed the stock as partnership property affords no protection to the defendant against the plaintiff in this case. Plaintiff was not a party to that proceeding, and it may well be assumed that both the court and the defendants intended and expected that the charge or cost of pasturage should be a charge upon the partnership, or the mortgagor, and a lien upon the equity only in the stock over and above the mortgage, whether that equity belonged to the mortgagor or to the partnership. Furthermore, there is nothing in the evidence which plainly shows, or from which a strong infer-

ence can be drawn, that the mortgagor would not have cared for and fed the stock, as he was under obligations to do by virtue of his relation to the property, as well as by the terms of the mortgage. The element of necessity, or emergency, on the part of the claimants of the agister's lien, for feeding the stock in order to save or preserve it, is not shown to have existed to the extent that a lien should be given therefor superior to that of the plaintiff. The evidence shows that a charge amounting to more than one-third the value of the stock was made against it without a vestige of authority, actual or implied, from the mortgagee. To permit this to be done would concede the right of confiscation by virtue of the statute.

By a late decision of the supreme court, *Rohrer v. Ross,* 53 Colo., 328, 125 Pac., 489, which the diligence of counsel did not disclose, and which has come to our attention since writing the foregoing opinion, the law upon the question of priority, as between the lien claimants herein, is settled, and the views hereinbefore expressed are in harmony therewith.

The judgment is reversed and the cause remanded with instructions to the trial court to enter judgment in favor of the plaintiff.

*Reversed and Remanded.*

---

KING, J., on petition for rehearing:

Moved thereto by the earnest request of the learned counsel for the defendant in error Day, and by his able argument in support of the petition for rehearing, we have endeavored to give the record "critical and unbiased reconsideration," the result of which is hereinafter expressed. We used the phrase "after the maturity of the mortgage as extended" advisedly, and not through inadvertence, believing that, by applying the rule of construction that all parts of a statute should be given force and effect rather than that any part thereof should per-

ish (even upon a strict construction as insisted upon by counsel), the statute in question clearly contemplates something more than a mere extension of the time during which the mortgagee must, after maturity of the debt, take possession in order to preserve his priority of lien and right. The statute provides for an extension of the mortgage and its lien by the act of the mortgagee, and upon compliance with its terms the maturity of the mortgage, which was theretofore identical with the maturity of the debt, is moved forward to the last moment of the extended period, during which time the mortgagor is entitled to possession of the chattels and exemption from their seizure to the same extent as under the original terms of the mortgage, notwithstanding default in payment of the debt at maturity. By virtue of such extension, and the terms of the statute, such default is lawfully waived for the full extended period, and the mortgage continued, unabated in force and unimpaired as to the remedies afforded the mortgagee, including a reasonable time after such maturity in which to take possession. In other words, by the act of the mortgagee, default as to the mortgage was prevented. Availing himself of the provisions of the statute, he extended the mortgage precisely as he might, with the consent of the maker, have extended the note which it was given to secure.

Neither in the case of *Rosenbaum Bros. & Co. v. Ryan Bros. & Co.*, 33 Mont., 424, 84 Pac., 1120, nor, do we think, in any of the many cases cited by counsel, is there any holding upon similar facts contrary to the views herein expressed. The question of an attempt, in those cases, to foreclose the mortgage by taking possession *within a reasonable time,* after expiration of the period of extension, was not in issue. After extension the mortgagee is not, as we have said, compelled and should not attempt to take possession within the period of extension, unless for some cause other than maturity of the debt or expira-

tion of the time for which the mortgage was originally given. He therefore has an *appreciable* time in which to take possession. In this respect there is no difference between the expiration of the lien of the mortgage·in the first instance by maturity of the debt, and the expiration of the lien and mortgage, as extended, by virtue of the lapse of time specified. The *appreciable* time given in which to foreclose is, in either case, *a reasonable time.* And the argument advanced, and every authority cited in support thereof by counsel for defendant in error, would be just as persuasive, but not more so, were we considering now for the first time whether, without a statute giving time for taking possession after the expiration of the mortgage, any time should be allowed a mortgagee. It is conceded that our supreme court, before the enactment of the thirty-day statute, uniformly held that a reasonable time should be allowed the mortgagee after expiration of the mortgage in which to take possession. Precisely the same reasons exist for allowing a mortgagee a reasonable time within which to take possession after expiration of the period to which the mortgage has been extended.

Counsel objects because no demand for possession was shown to have been made upon the defendant, Day, prior to suit. But Day was the agister for Tuckerman as receiver, and, if any demand was in fact required, demand upon and notice to Tuckerman was sufficient, there being no privity between the mortgagee and Day. However, we think a demand was not a necessary condition precedent to plaintiff's right to replevy the stock, except so far as it may have been necessary in order to obtain permission of the court to sue its receiver. · Under the circumstances we think that, as to this plaintiff, both Tuckerman and Day were ·trespassers· *ab initio.* With actual knowledge as well as constructive notice of plaintiff's rights as mortgagee they took possession of the stock before maturity of the mortgage and at all times

thereafter held it, in hostility to the rights of the mortgagee, under a claim of prior lien created by order of the court. Such taking was, as to the mortgagee, a conversion, and, therefore, they could thereafter neither have a lien on the stock for feeding nor insist upon demand for possession as a condition precedent to the right of the mortgagee to maintain his suit. They were not, as to him, subsequent lienees in good faith under our statutes.— *Howard v. Bank,* 44 Kan., 549, 24 Pac., 983; *Howard v. Burns,* 44 Kan., 543, 24 Pac., 981; *Gregory v. Thomas,* 20 Wend., 17; *Newman v. Tymeson,* 12 Wis., 448; *Beh v. Moore,* 124 Ia., 564, 100 N. W., 502; *Harding & Co. v. Kelso,* 91 Mo. App., 607, 609; *Lowe v. Wing,* 56 Wis., 31, 13 N. W., 892; *Corbin v. Kincaid,* 33 Kan., 649, 7 Pac., 145. These cases hold that a junior mortgagee, and, as well, a person claiming under a junior lien for agistment, who takes possession of mortgaged goods prior to the maturity of the senior mortgage, and with full knowledge thereof and in hostility thereto, cannot be heard to insist that the senior mortgagee must take, or attempt to take, possession of the goods in order to protect such senior mortgagee's prior lien; and, further, that a demand is not necessary to entitle such mortgagee to maintain his action in replevin or for conversion. The same rule is recognized and applied in *Bradford v. Roberts,* 46 Colo., 330, 104 Pac., 391, as to an attachment creditor. Moreover, demand need not be shown where the defendant subsequently contests the action on its merits, or where it otherwise appears that a demand, if made, would have been unavailing.

The decision of our supreme court in *Rohrer v. Ross,* 53 Colo., 328, 125 Pac., 489, has not been unduly extended to the facts in this case, as it has only been given force as decisive of the seniority of a chattel mortgage lien over that of an agister acquired during the life of the mortgage.

We may concede the claim of counsel that the estate of the deceased mortgagee received substantial benefit from the excellent care given the stock by the defendant, Day; and, notwithstanding the fact that his care was purely voluntary, so far.as the administrator was concerned, there may be reason for considering the question of his claim for compensation. But that is a matter which should be presented to the court having jurisdiction of the administration, and cannot be determined in this proceeding. It does not necessarily follow that, because Day may not recover at all from the mortgagee (if the probate court should so decide), he is without a remedy against Tuckerman, the receiver, or the mortgagor. The petition for a rehearing is denied.

Decided April 14, A. D. 1913. Rehearing denied June 10, A. D. 1913.