WILLIAM C. DENISON v. DANIEL SHULER ET AL.

*Vendor's lien precedes mechanic's lien.*

A vendor's lien secured by a duly recorded chattel mortgage takes precedence of a mechanic's lien for repairs subsequently done at the purchaser's request.

Case made from Eaton. Submitted January 18. Decided January 25.

REPLEVIN. Defendants had judgment. Reversed.

*Taggart, Stone & Earle* for plaintiff. Mechanic's liens are innovations on the common law: *Wagar v. Briscoe* 38 Mich. 587; a mortgager of a chattel cannot subject it to a mechanic's lien as against the mortgagee without the latter's consent: *Sargent v. Usher* 55 N. H. 287; *Small v. Robinson* 69 Me. 425; *Bissell v. Pearce* 28 N. Y. 252.

*Huggett & Shriner* for defendants. Where a chattel mortgage leaves the mortgager the use of the property, he has authority to create liens for such repairs as are needed to keep it in condition to be used: *Hammond v. Danielson* 126 Mass. 294; *Scott v. Delahunt* 5 Lans. (N. Y.) 372: 65 N. Y. 128; *Williams v. Allsup* 10 C. B. (N. S.) 417; Herm. Chat. Mortg. 388; Jones Chat. Mortg. § 473; and liens created by force of law take precedence of prior mortgages: *Beall v. White* 94 U. S. 384; every bailee for hire who has given the property additional value has a lien on it for his

reasonable compensation: 2 Kent's Com. (12th ed.) § 635; *Grinnell v. Cook* 3 Hill 491; Comp. L. § 6830; a lien for repairs on a mortgaged vessel can be enforced after possession has been transferred to the mortgagee: *Donnell v. The Starlight* 103 Mass. 227; *The Granite State* 1 Sprague 277; a lien given by law for necessary repairs on a boat precedes an existing mortgage: *Provost v. Wilcox* 17 Ohio 359; an agister's lien for keeping cattle is paramount to a prior mortgage: *Case v. Allen* 21 Kan. 217.

GRAVES, C. J. This is a case made after judgment. The plaintiff brought replevin for "one Ames' engine, No. 2832, ten-horse power," and the officer took it from defendants on the writ and delivered it to the plaintiff. The action was tried without a jury and the circuit judge found specially and determined that defendants were entitled to the amount of their alleged lien for repairs. The finding appears below.*

---

*FINDING.

1st. That on the 23d day of July, A. D. 1879, the plaintiff sold to one Charles W. Canute and C. D. Bidwell, the engine described in the declaration in this cause, and as a security for the purchase price thereof, took a chattel mortgage of which the following is a copy:

"Know all men by these presents, that Charles W. Canute and C. D. Bidwell, of Roxana, Eaton County, Michigan, being justly indebted to W. C. Denison of Grand Rapids, of Kent County and State aforesaid, in the sum of thirteen hundred and eighty dollars, has for the purpose of securing the payment of said debt, granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto the said W. C. Denison, the following described goods, chattels and personal property, to wit: one cream mare nine years old, one black mare five years old, one set double harness and one lumber wagon new and now used with team, one black horse six years old, one bay horse eight years old, one set double harness, one lumber wagon about new, one new Minnesota Chief Threshing Machine all complete, one Ames' engine ten-horse power, No. 2832, new. To have and to hold the same to the said W. C. Denison of Grand Rapids, and to his executors, administrators and assigns, Forever, and we do represent unto the said W. C. Denison, that we are the owners of all and singular the above described goods, chattels and personal property; that the same and every part thereof is free and clear from all liens, levies and incumbrances whatever, and for a valuable consideration we do hereby warrant the same representations to be true. The conditions of these presents is such, that if the said Charles W. Canute and C. D. Bidwell shall pay to the said W. C. Denison, of Grand Rapids, the debt aforesaid: On or before the first day of December, A. D. 1879, five hundred dollars; on or before the first day of December, A. D. 1880, four hundred and forty dollars; on or before the first day of December, A. D. 1881, four hundred and forty dollars,

The plaintiff sold the engine to Canute and Bidwell and took back the mortgage set out in the finding to secure the purchase money. This was on the 23d day of July, 1879. The mortgage was duly filed and was kept in force by regular renewals. The sum of $650 still remains unpaid. The defendants are mechanics, and the engine requiring certain repairs to put it in condition for use, Canute & Bidwell delivered it to them for that purpose. This was in November, 1880, and between that time and the 19th of January following they made repairs which involved labor and materials to the sum of $185.86. This money remained unpaid and the engine continued in the possession of the defendants. They took no active measures to enforce their lien. The plaintiff claimed possession on the mortgage, and they refused to give it unless on payment of their charges.

No question arises on the validity of the mortgage or of

---

then this instrument shall be void, and the said Charles W. Canute and C. D. Bidwell do hereby agree to pay the same accordingly. But if default be made in such payment, the said W. C. Denison or his representatives as aforesaid are hereby authorized to sell at auction or private sale, the goods, chattels and personal property above described, and at such sale to purchase any portion thereof, as he may deem best, and out of the proceeds of such sale to pay, first, the reasonable cost and expense of taking and keeping while in possession of W. C. Denison or his representatives, and of selling said goods, chattels and personal property; second, the amount of principal and interest that shall be due and unpaid thereon; and third, the balance, if any, to Charles W. Canute and C. D. Bidwell.

And it is hereby understood that Charles W. Canute and C. D. Bidwell are to retain the use and possession of said goods, chattels and personal property, free of all charge to the said W. C. Denison or his representatives, but at their own risk, until such time as they make default aforesaid, or as in the said W. C. Denison's opinion, it shall be necessary for him to take actual possession thereof to preserve his security by their not taking prudent care of said goods, chattels and personal property; but if the said W. C. Denison shall desire to take possession thereof to preserve his security, or if they fail to take such prudent care as aforesaid, or if they make default in the payment of said debt and interest, as aforesaid, or any part thereof, then in either of the cases, said W. C. Denison, or his representatives, may take actual possession of said goods, chattels and personal property, and for that purpose may enter all places where the same may be; and if, after taking possession and before sale, any of said goods, chattels and personal property shall die, be stolen or lost or injured, without the gross neglect of said W. C. Denison, the loss thereof shall not be borne by W. C. Denison.

In witness whereof we have hereunto set hands and seals this twenty-third day of July, A. D. 1879.

CHARLES W. CANUTE, [L. s.]
C. D. BIDWELL. [L. s.]

the lien. Both are assumed to be valid. The difficulty is that they are sought to be enforced in direct hostility to each other and one must necessarily give way, and the point is which shall take precedence. The circuit judge ruled that the last should overreach the first.

The mortgage was on file and defendants were therefore affected with notice. On general principles it would seem that the lien so carefully reserved by the vendor, the person furnishing the entire original machine, ought to have priority over the subsequent repairers. The engine itself included all the labor and all the material necessary for its production, and when the plaintiff sold it he virtually furnished to his vendees that labor and those materials, and preserved an express lien. The repairers did less. Their expenditure was comparatively small and they acted in making it under circumstances which charged them with

---

And thereupon said engine was delivered to said Canute and Bidwell.

2d. That said mortgage was duly filed in the office of the Township Clerk of the proper township, on the 26th day of July, 1879, and was kept renewed by filing and attaching thereto the proper affidavits, as required by law, in the years 1880 and 1881.

3d. That on the 15th day of November, 1880, the said Canute and Bidwell delivered said engine to the defendants in this cause, to have certain repairs made thereon, the defendants being mechanics.

4th. That repairs were made by the defendants during the period intervening between that time and the 19th of January, 1881, to the amount of one hundred eighty-five dollars and eighty-six cents for labor and materials, fourteen dollars worth of the same being put upon the engine before the first of December, 1880, and the balance afterward.

5th. That such repairs were proper and necessary to be made, to put said engine in condition for use.

6th. That the same were made without the knowledge of the plaintiff, and were made at the request of Canute.

7th. That Canute failed to pay for the repairs, and defendants held possession of the engine until taken by virtue of the writ of replevin issued in this case. The plaintiff came and duly demanded it of the defendants under his mortgage before the writ was issued.

8th. That defendants refused to give the plaintiff possession unless he would pay the cost of the repairs, which plaintiff declined to do, and afterwards sued out the writ of replevin in this case and took the engine thereon.

9th. That only $150 has ever been paid on plaintiff's mortgage, and that the value of the engine at the time the engine was bought was six hundred and fifty dollars.

10th. That no proceedings were taken by defendants at any time to enforce their lien.

11th. That some time previous to the delivery of said engine to defendant, and about September, 1880, the agent of plaintiff went and saw said Canute and Bidwell for the purpose of collecting money on the first

notice of the plaintiff's prior lien. Why should their claim be preferred?

The principle, says Chief Justice Marshall, is believed to be universal, that a prior lien gives a prior claim which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant. *Rankin v. Scott* 12 Wheat. 177, 179. The finding contains no act of the plaintiff postponing his mortgage to defendants' subsequent lien, and no ground of inference is seen of any authority in the mortgagors to subject the engine to a claim overriding his security. So far as the terms of the transaction import anything on the subject they bespeak a purpose by the plaintiff to have and hold as security for the consideration of his sale, the first and immediate claim and lien

---

instalment then due on said mortgage; that at that time he became aware that said engine was unfit for use for want of repairs, and then and there stated to said Canute that "You will have to go and get it fixed," meaning said engine, but this was not intended or understood as a direction to have repairs made at the cost of the plaintiff, or as any authority to have them so made. Canute and Bidwell did have repairs made after this talk, and paid for them; such repairs were made by persons other than defendants, and the defendants had no knowledge of said conversation, and said repairs, when completed, were insufficient to put said engine in running order.

12th. That no steps had ever been taken by said plaintiff to foreclose his said mortgage, previous to the demand made upon said defendants, which demand was made after defendants had completed their repairs.

And upon the foregoing facts the said court finds as matters of law the following:

1st. That at the time the plaintiff demanded the engine of the defendants, and took it upon the writ in this case, he had a lien upon it for the amount unpaid on his mortgage and in excess of the value of the engine.

2d. That at the time of the said demand and suing out of said writ, said defendants had a mechanic's lien upon the engine for the amount of the repairs.

3d. That said defendants' lien had not been lost by their not taking proceedings to enforce it under the statute.

4th. That the mechanic's lien of the defendant is superior to and takes precedence of the lien of the plaintiff as chattel mortgagee, and the defendants were entitled to hold possession of the engine against the plaintiff when demanded, unless plaintiff paid the amount of the lien.

5th. That defendants are entitled to judgment for one hundred eighty-five dollars and eighty-six cents and costs.

FRANK A. HOOKER, Circuit Judge.

on the very title which he granted. He did not intend that a subsequent encumbrancer should be let in to obtain a lien which would outrank his own.

The statutes directly relating to the subject, although somewhat vague, will not bear a construction adverse to the plaintiff. Comp. L. §§ 6823, 6824, 6825 : amendments of 1873, vol. 1, p. 118. They mention the institution of the lien in case the property is delivered to the artisan by "*any person;*" but this general language was not designed to subject the interest of one individual to a lien through the delivery of another having no sort of connection with that interest nor any authority to affect it. Were the terms to be applied literally the delivery by a thief would be sufficient. The words must have a reasonable construction and one which will cause them to operate consistently with the principles of justice and the general laws of property. Had it been intended that the kind of lien in question should operate retrospectively and override prior securities executed to secure purchase money it is not to be supposed that the Legislature would have left the purpose in any doubt.

The view to which these observations lead is that the effect of the transaction between the mortgagors and the defendants respecting the repairs in question was to give a lien to the defendants on the equity or right of redemption and subject of course to the plaintiff's mortgage. The lien did not apply to the plaintiff's interest, but was confined to that of the mortgagors. The plaintiff was entitled to have possession under his mortgage without paying defendants, and the latter were entitled, if they desired, to redeem against the mortgage.

There is some want of harmony in the cases, but the weight of authority on the state of facts in the record is believed to favor this conclusion. *Fitch v. Newberry* 1 Doug. (Mich.) 1; *Sargent v. Usher* 55 N. H. 287; *Small v. Robinson* 69 Me. 425; *Carrington v. Ward* 71 N. Y. 360. *Hammond v. Danielson* 126 Mass. 294, is the strongest case noticed for the view taken by the court below. But it does not appear whether statutory provisions had or had not any

influence, and moreover the essential facts were not the same.

The judgment should be reversed and one entered here for the plaintiff with the costs of both courts.

The other Justices concurred.