(75 N. W. Rep. 253.

---

## The First National Bank of Mandan, N. D. vs. Levega S. Scott.

Opinion filed April 19th, 1898.

**Agister's Lien—Priority.**

> The lien of an agister, under § 5486, Comp. Laws, is inferior to that of the holder of a mortgage executed and filed before the lien of the agister attached.

Appeal from District Court, Stark County; *Winchester*, J.

Action in claim and delivery by the First National Bank of Mandan, N. D., against Levega S. Scott, to recover possession of a band of sheep. Plaintiff claimed the right to possession as the owner of a note and chattel mortgage thereon given to secure the purchase price of the sheep. The defendant who was in possession of the sheep refused to surrender possession thereof upon demand of plaintiff and after default in the terms and

conditions in its mortgage entitling it to possession as against the mortgagor, defendant claiming a superior lien by virtue of his contract of agistment for feeding and herding the sheep.

*James G. Campbell*, for appellant.

*E. C. Rice*, for respondent.

CORLISS, C. J.   The contest we are to settle is a strife between an agister and a chattel mortgagee for priority of lien.   The plaintiff holds a mortgage upon a flock of sheep executed and filed November 19, 1892.   The defendant claims a lien thereon under section 5486, Comp. Laws.   That he is entitled to such lien is undisputed.   But plaintiff denies that it is prior to the lien of the mortgage held by it.   At the time defendant took the sheep into his possession as an agister the mortgage had been executed and was on record.   He was therefore chargeable with knowledge thereof.   Hence his claim to priority must rest either upon the provision of the statute or upon the proposition that the plaintiff has by its conduct waived its priority of lien.   The statute declares that "any farmer, ranchman or herder of cattle, tavern keeper, or livery stable keeper, to whom any horses, mules, cattle or sheep shall be entrusted for the purpose of feeding, herding, pasturing or ranching, shall have a lien upon said horses, mules, cattle or sheep, for the amount that may be due for such feeding, herding, pasturing or ranching, and shall be authorized to retain possession of such horses, mules, cattle or sheep until the said amount is paid; provided, that these provisions shall not be construed to apply to stolen stock."   As it is thought that section 5487 throws light upon the meaning of the previous section, we quote that also:   "The provisions of this act shall not be construed to give any farmer, ranchman or herder of cattle, tavern keeper or livery stable keeper, any lien upon horses, mules, cattle or sheep, put into their keeping for the purposes mentioned in the previous section; when said property was not owned by the person entrusting the same at the time of delivering them into the possession of said farmer, ranchman, herder, tavern keeper or livery stable keeper."

Without an extended discussion of the question, we are satisfied that it was not the purpose of the legislature to displace an existing lien created by a chattel mortgage duly filed in favor of a subsequent lien springing from a contract of agistment. Such a view of the law would seriously impair the value of a class of securities in very common use in this state, and on the basis of which much of the business of our people is carried on. We cannot, on a mere conjecture hold that a policy so unwise was in the legislative mind when it enacted the statute in question. The chief value of this kind of security is that it leaves the owner in the enjoyment of his property. If the right to retain possession is to involve the right of the owner to create prior liens thereon to the destruction of the lien he has previously created, because he has failed to discharge his implied duty to the mortgagee, *i. e.* the duty of properly caring for the property, then it will follow that money cannot be obtained on such security. Those who have it to loan will not incur so great a hazard. Had the legislature intended to give the agister's lien priority over that of an existing mortgage, we are satisfied that it would have so declared, as it has done with respect to other liens. See Comp. Laws, § 5491; Rev. Codes, § § 4815, 4818, 4822, 4825; Laws 1890, Ch. 88. And see *Garr* v. *Clements*, 4 N. D. 559, 62 N. W. Rep. 640. It is somewhat significant that when sections 5486, 5487, Comp. Laws, were re-enacted in the form of sections 4813 and 4814, Revised Codes, there was added a section expressly giving to the agister priority of lien. Revised Codes, § 4815. This right of priority, however, is not absolute. It is secured only by giving timely notice to the holder of the existing lien. This qualified right to priority is unobjectionable. But the absolute right thereto contended for by counsel for appellant would be highly injurious to the best interests of the state, and we are unwilling to believe that such statemanship lies behind the statute we are construing. The able opinion of Judge Kellam in *Wright* v. *Sherman*, 3 S. D. 290, 52 N. W. Rep. 1093, leaves nothing to be said on the subject. We refer to it, and to the

decisions therein cited, in support of our ruling on the question of the true interpretation of the statutes which govern the case.

It is urged that the mortgagee has tacitly agreed to postpone the lien of its mortgage to that of the agister. This contention rests upon a clause in the mortgage itself. At the time it was given the bank was informed of the fact that the sheep would be wintered by the defendant, and there was inserted in the instrument the following words: "To be wintered by L. Scott, about two miles west of Taylor." We discover in this recital in the mortgage nothing more than a recognition of the fact that during the winter the sheep were to be in the possession of defendant as agister. For convenience of locating the property on which the bank held the mortgage, such a recital would be very valuable. But it is impossible to spell from it any agreement on the part of the bank that the agister shall have any greater lien than the statute itself gave him. It merely shows that the bank knew that some one was to care for the sheep for a season, and might obtain a lien thereon for his charges. Every mortgagor knows that this is possible, but this knowledge will not be construed as a consent that such lien shall take precedence of his own lien. Nor will knowledge on his part that it is not merely possible, but certain, that another will, at some time in the future, obtain a lien thereon for caring for them, be tantamount to an agreement to waive his own priority of lien in favor of the lien which subsequently accrues. Had the mortgagee itself placed the property with the agister, there might be room for the claim that it had tacitly agreed that its lien should be inferior to that of the agister. But no such case is before us. There is no evidence in the record tending to show that the contract of agistment was made before the mortgage was given and filed. On the contrary, the evidence establishes the fact that both the agreement, and the delivery of the sheep thereunder, were subsequent to the execution and filing thereof.

The judgment of the District Court is affirmed. All concur.