GRANT HOWARD, Appellant, v. JAMES BURKE, Appellee.

**ANIMALS:** Damage Feasant—Chattel Mortgages—Priority—Replevin. The claim for damages, duly assessed, of one taking up trespassing animals, is superior to the right of a prior and recorded chattel mortgage on said animals, the statute granting such right of distraint *not* providing that such claim for damages shall be subject to prior recorded liens.

WEAVER, J., dissents.

**ANIMALS:** Damage Feasant—Priority Over Mortgage—Public Policy. A statute not specifically so declaring, but requiring a construction that the claim for damages of one taking up trespassing animals is superior to the right of a prior mortgagee of the animals, is not contrary to "public policy."

**CONSTITUTIONAL LAW:** Impairment of Contracts—Damage Feasant Law. One may not claim that his contract has been impaired by a statute when the statute was in existence prior to entering into the contract in question. So held as to the damage feasant statute, which involves the holding that the claim for damages thereunder is prior in right to a chattel mortgage.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

FRIDAY, MAY 5, 1916.

ACTION in replevin to recover two swine under and by virtue of plaintiff's chattel mortgage, and claiming that his chattel mortgage lien was superior to the claim of appellee

for damages caused by trespassing animals. The court found for the defendant, and the plaintiff appeals.—*Affirmed.*

*W. G. Sears, E. S. Fergason* and *F. L. Ferris,* for appellant.

*Earl Edmonds* and *Henderson & Fribourg,* for appellee.

PRESTON, J.—The case was tried upon an agreed statement of facts, which was substantially this: The defendant, Burke, was the owner of farm lands upon which he resided and had certain crops during the year 1913; one Mark Howard, a son of plaintiff, lived upon an adjoining farm, which he had leased from the owner thereof, one Wendell; and the said Mark owned certain hogs, which he kept upon the farm he had leased. During the season of 1913, these hogs came upon defendant's land and were found thereon by defendant damage feasant, or destroying defendant's crops. Defendant distrained two of said hogs and took possession thereof and impounded them. All proceedings by the appellant in distraining said swine, and by the township trustees and all officers, were regular and as provided by law. It is not contended otherwise by appellant, so that we will not recite the facts as to this.

The trustees assessed the damages done by the hogs at $24.30, including costs. Mark Howard refused to pay said amount, and the trustees advertised the hogs for sale. Before the sale had taken place as advertised, the plaintiff procured from Wendell an assignment of the chattel mortgage on these hogs, and also procured the assignment of a note from said Wendell upon which there was a balance due of $15 and interest. The note was secured by the mortgage. The mortgage was properly recorded in October, 1912, in the county where defendant's land was situated. Plaintiff commenced an action in justice court to recover the possession of the hogs under his mortgage, and took possession thereof and sold the

same.   The value of the hogs was $35.   The finding was for plaintiff in the justice court, and defendant appealed.

In the district court, a jury was waived, and the court found for the defendant.   A certificate of appeal was allowed, and the case is here upon the question as to whether the lien of plaintiff's chattel mortgage is superior to the claim of defendant, or whether the defendant's claim for damages against trespassing stock, given by Section 2313 of the Code, takes priority over a recorded chattel mortgage on the same stock.

Appellant claims that the statute does not give a lien prior to the mortgage, because: first, it is against public policy, in that it destroys or greatly impairs the merchantable value of live stock; second, because such a lien, being statutory, cannot have priority unless expressly so stated in the statute, and the statutes of Iowa do not so state; and, third, because such a statute, or such a construction of the existing statute, would render it unconstitutional as impairing the obligations of contracts.

1.   On the first proposition, appellant cites several cases, among them, *Howes v. Newcomb*, 146 Mass. 76 (15 N. E. 123) ; *Wright v. Sherman* (S. D.), 52 N. W. 1093.   The first proposition is not argued by appellant further than

1. ANIMALS: damage feasant: chattel mortgages: priority: replevin.

to cite the cases under this point as above stated.   In the first case cited, it was held that, in order to establish a lien for the keeping of horses left with the mortgagee thereof in the hands of the mortgagor, to be used by him in his business, there must be an express or implied consent on the part of the mortgagee to such keeping, and the holding was that consent is not to be presumed from the mere possession by the mortgagee, and that knowledge on the part of the mortgagee that the horses were kept in a barn belonging to an employe of the mortgagor would not create an implied consent on his part to such keeping.   And in the *Wright* case, the holding was that the lien of a chattel mortgage, properly filed, is paramount to that

of an agister for subsequently pasturing the mortgaged stock, unless it is shown that the mortgagee consented that such stock might be so pastured and subjected to such lien. The agister can refuse to accept the stock and has knowledge of the mortgage.

An innkeeper is under no obligation to receive and provide for the guest. Where stock is found damage feasant, there is no time to investigate the chattel mortgage record or make inquiry concerning such matters.

Defendant's claim for damages is in the nature of an action *in rem* where stock is found damage feasant, and is against the animal. The animal should be distrained to prevent further damage, and distraint provides the best method of securing redress. If there is any argument on the question of public policy, we think it is in favor of preventing the destruction of crops by live stock running at large. This is particularly true as to swine, which are, under our statute, at all times prohibited from running at large. Code Section 2314.

We think it is not against public policy to provide a method of collecting damages caused by swine running at large and found damage feasant, for it is to the interest of everyone, the owner of stock and the owner of crops, that such damage be prevented, and, if permitted by the owner, that the person suffering the damage shall have some speedy method of collecting the damage done. We think the cases cited by appellant are not in point.

2. ANIMALS: damage feasant: priority over mortgage: public policy.

2. Appellant assumes that defendant's claim is a lien. It may be such, in a sense, after he has taken possession of the trespassing animals. Section 2313 provides that any animal trespassing upon land fenced as provided by law may be distrained by the owner of such land and held for all damages done thereon by it, unless it escaped from adjoining land in consequence of the neglect of such landowner to maintain his part of a lawful partition fence, etc. It says nothing about

any lien, but provides the method by which the claim for damages may be enforced. It does not say whether damages are or are not superior to a chattel mortgage. Appellant cites a number of cases on this point, among them, the following Iowa cases: *Beh v. Moore,* 124 Iowa 564; *Haggard v. Scott,* 142 Iowa 682; *Des Moines Brick Co. v. Smith,* 108 Iowa 307; *Hunter v. Citizens' Sav. & Tr. Co.,* 157 Iowa 168; *Deering v. Wheeler,* 76 Iowa 496; also 23 Cyc. 1368.

These cases hold to the rule, substantially, that, in the absence of statutory provision to the contrary, liens take precedence in the order of time, the first in point of time being superior, and that, under certain provisions of the statute providing for liens, the party's rights are purely statutory and no broader than the statute. And it is appellant's contention that the statute for trespassing animals does not make any provision for priority for the lien or claim for damages over prior liens of record, and thus the lien must be enlarged beyond the language of the statute in order to create priority. A number of instances in the statutes of this state referred to in the foregoing cases provide for statutory liens, and in some of them special provision is made that such liens shall be subject to prior liens of record. The lien of a livery stable keeper comes under this head. Code Section 3137. The lien of innkeepers is provided for in Section 3138. The statute provides that the lien of labor claimants is prior to certain other liens. When the legislature intends to create a lien subject to prior liens of record, the statement is explicit to that effect, and when the lien is not to be subject to prior liens of record, there is no provision made therefor. As stated, the claim of the owner of the crops for damages done by trespassing animals is not called a lien. The language of the statute, as found in Section 2314, is as follows:

"Animals thus prohibited from running at large, when trespassing on land, or a road adjoining thereto, may be distrained by the owner of such land, and held for damages done by them, and for the costs provided in this chapter."

That there is nothing said about a lien and a chattel mortgage against swine, prohibited at all times from running at large, does not make such swine any the less trespassing animals. It gives the owner of the land the right to distrain any such animal found doing damage, regardless of prior liens of record. If this be not so, then all that would be necessary to permit all stock and all swine to run at large would be to have a chattel mortgage against them duly recorded, and then, no matter how small the chattel mortgage or how large the amount of damage, the landowner and owner of the crops would be helpless. The defendant is not seeking in this action to extend a lien beyond the language of the statute or to change a lien of one kind for that of another.

Perhaps we should have referred to the *Beh* case, *supra*, which comes under our statute, providing for a lien in favor of livery stable keepers. The question there was whether the mortgagee was bound by the fact that he knew that pasturage was being furnished, and it was held that the question was obviated by reason of the wording of the statute providing that such a lien is subject to prior liens of record, and that was all the notice to which the agister was entitled. We are of opinion that the court correctly decided that plaintiff's chattel mortgage was not superior to the claim of defendant for damages.

3. As to the contention of appellant that the statute impairs the obligation of contracts and is, therefore, unconstitutional, the argument is that, if one who takes a mortgage in good faith, believing that he is amply

**3. CONSTITU-
TIONAL LAW:
impairment of
contracts: dam-
age feasant law.**

secured, must postpone his duly recorded mortgage to a lien for damages by the stock that form his security, it would impair the obligation of contracts by diminishing or destroying the very security on which he relied, by sacrificing it to secure a damage claim, often without the knowledge of the mortgagee, and, even if he did know it, would require him to advance money

far beyond the value of his security to protect what he had a right to believe already secured. They cite in support of the proposition: *National Bank of Commerce v. Jones* (Okla.), 11 Am. & Eng. Ann. Cas. 1041; *Toledo D. & B. R. Co. v. Hamilton*, 134 U. S. 296; *Crowther v. Fidelity, etc., Ins. Co.* 85 Fed. 41, 43; *Yeatman v. King* (N. D.), 51 N. W. 721; *Giles v. Stanton* (Texas), 26 S. W. 615; 1 Jones on Liens, § 701; *State v. Lynch*, 169 Iowa 148.

The foregoing cases are all cited in the first one. In that case, the Oklahoma court said:

"These authorities lay down the doctrine that a mortgage lien constitutes a vested property right, and after it has attached, the legislature has no power to create a lien superior to the vested interest, or to provide that such vested lien shall be made inferior to a lien subsequently created, and we think this rule sound, and in harmony with reason and justice."

But the trouble with appellant's contention at this point is that the statute in question does not pretend to make a claim for damages where trespassing stock is distrained prior to the lien of a mortgagee. It simply provides that trespassing animals may be distrained, and the method for collecting damages. It does not in any way impair the contract between the mortgagor and the mortgagee. If plaintiff was the owner of the animals, instead of simply a mortgagee, and they were trespassing upon defendant's premises and destroying the crops, the defendant would have a right under this statute to take the property itself. The statute in question, or a very similar one, has been the law of Iowa for 50 years. It was enacted long prior to the making of the contract between plaintiff and the mortgagor.

Appellee cites *Davis v. Bronson*, 6 Iowa 410, to the effect that laws made prior to the formation of a contract cannot impair its obligation, because all existing laws enter into the contract when made and define and determine it.

The law in regard to distraining trespassing animals does not require that notice be given to the mortgagee, or that his rights shall be given any consideration upon distraint of the animals. It would be unreasonable to hold that animals found damage feasant are subject to a prior lien of record, and that the mortgage throws around such animals and their owner a protection such as they would not have were it not for the mortgage, and compel the owner of the crops destroyed to ascertain from an investigation of the records of the county whether there were any incumbrances, before he would be justified in distraining the animals. Such a search would enable the animals to go a long distance and beyond the reach of the person damaged. In such case, he would have no remedy whatever, unless the owner of the animals was solvent. But he would have no redress against the animals. Such a construction would nullify the statute. The statute ought not to be so construed as to enable a man without property or means to pay damages, to purchase animals, execute a chattel mortgage on the same for the purchase price for all they are worth, and then turn them loose to live upon the crops of the neighbors until the crops are totally destroyed, and the owner of the crops be compelled to stand by helpless. We think this summary provision of the law is for the protection of those suffering damage by reason of the negligence of irresponsible parties, or anyone permitting their animals to run at large. As stated, the statute seems to be plain, and the only way the contention of appellant could be sustained is to read an additional provision into the law. The statute reads that trespassing animals may be distrained and held for damages, and there is nothing said to the effect that all animals except those upon which there is a chattel mortgage lien shall be distrained, but that animals unlawfully trespassing upon land and found damage feasant can be distrained, and then provides for a method of fixing the damages. There is nothing about a mortgage lien or any other lien of record, but that certain acts shall be performed and the damages ascertained,

and if not paid, the animals sold.   We are of opinion that the statute is valid.

It follows from what we have said that the judgment of the district court is right, and it should be and is—*Affirmed.*

EVANS, C. J., DEEMER and GAYNOR, JJ., concur.

WEAVER, J., dissents.