In the Matter of WALTER CONKLIN, Appellant, and UNITED STATES OF AMERICA, Intervenor-Appellant, *v.* H. DAVID LONG et al., as Assessors and Fence Viewers of the Town of Mount Morris, Respondents.

Fourth Department, April 4, 1963.

*Chamberlain, D'Amanda, Bauman & Brundage (Arthur VD. Chamberlain* of counsel), for appellant.

*John T. Curtin, United States Attorney (Stephen S. Joy* of counsel), for intervenor-appellant.

*Charles D. Newton* for respondents.

BASTOW, J. Petitioner commenced this proceeding to vacate the determination of Fence Viewers who acted pursuant to certain provisions of article 18 of the Town Law. Subsequently, the United States of America was permitted to intervene. Petitioner and intervenor appeal from an order dismissing their respective petitions.

An intelligent consideration of the contentions of appellants and the legal questions presented requires a preliminary review of the provisions of article 18 of the Town Law. This article deals with at least two separate and distinct subjects. Sections 300 to 309 set forth the duties, obligations and liabilities of

owners of adjoining tracts of land, the powers of Fence Viewers in regard thereto and pertinent procedures. Sections 310 to 322 relate to the rights of a landowner who finds strayed domestic animals owned by another upon his lands.

Prior to 1932 article 19 of the Town Law (§§ 360–369) provided for "Fences" and article 20 (§§ 380–396) for " Strays ". (L. 1909, ch. 63, as amd.) In that year (L. 1932, ch. 634) the Town Law was revised and re-enacted. These two articles were combined (as they are at present) in article 18 under the heading " Fences, Strays and Pounds ".

The two subject matters dealt with in article 18 have different historical backgrounds at common law that become relevant in the ultimate decision of some of the issues herein. First, as to division fences. At common law, adjoining owners, in the absence of agreement to the contrary, were not bound, as to each other, to maintain division fences. (*Roney* v. *Aldrich,* 44 Hun 320, 322.) A man was not bound to fence his lands against cattle but the owner of the beasts was bound to restrain them and was answerable for any trespass which they might commit upon lands of another. But in this State for more than 100 years there have been statutes restricting this liability and altering the common law as to adjoining owners. " Unless one of the owners chooses to let his land lie open, each party is bound to make and maintain a just proportion of the division fence; (1 R. S. 353, § 30;) and the party who is in default has no remedy for a trespass by the cattle of an adjoining land owner. (Act of 1838.) When the party who suffers by the trespass is not in fault in relation to the division fence, the statute has to some extent given him a new remedy, by calling in the fence viewers to appraise his damages;" (*Stafford* v. *Ingersol,* 3 Hill 38, 40.)

On the other hand, " A man finding beasts of another wandering on his grounds, damage feasant, that is, doing him hurt or damage by treading down his grass and the like, may, by the rules of the common-law, distrain them till satisfaction be made him. (3 Black, Comm., 7.) The proceedings upon such distress are, in this State, regulated by statute, and provision is made for a summary appraisal of the damages by the fence viewers, and an impounding and sale of beasts, or the safe keeping and sale of inanimate property for the payment of the assessed damages. (2 R. S., 517.)" (*Cook* v. *Gregg,* 46 N. Y. 439, 443.)

Turning to the facts in this case. On September 9, 1960 one Sipperley found cattle owned by petitioner upon his lands doing damage to his crops. Sipperley seized the cattle and pursuant to section 311 of the Town Law served written notice, among other things, (1) of such seizure; (2) that the animals did not

come upon his premises because of his failure to maintain a division fence; and (3) that he claimed a lien on the cattle for his damages. Conklin, the petitioner herein and owner of the animals, immediately started a proceeding in Supreme Court for an order directing the return of the animals. In an affidavit in that earlier proceeding Conklin stated: "That the lands of said Leonard Sipperley do not adjoin the lands of deponent there being other lands between that of the deponent and of said Sipperley." Conklin contended that relief should be granted because (1) Sipperley's lands were not enclosed; (2) the animals did not come from adjoining lands; and (3) Sipperley did not maintain a division fence. Special Term held that the notice served by Sipperley pursuant to section 311 of the Town Law was valid and sufficient and that the sufficiency of a division fence was immaterial "since it is conceded by the parties in open court that the stray animals * * . * did not come from lands adjoining those of * * * Sipperley." No appeal was taken from that order.

Petitioner, however, erroneously pursues the issue of a division fence in this proceeding. It is unnecessary to determine whether or not the former order is *res judicata*. As we have seen the maintenance of a division fence and damage resulting therefrom is here inapplicable for the reason that the lands of petitioner and Sipperley did not adjoin.

We are concerned with stray animals found upon nonadjoining lands. Section 310, so far as here material, provides that "Whenever any person shall have any strayed * * * cattle * * * upon his inclosed land, or shall find any such beast on land owned or occupied by him doing damage, and such beast shall not have come upon such lands from adjoining lands, where they are lawfully kept, by reason of his refusal or neglect to make or maintain a division fence required of him by law, such person may have a lien". Sipperley in seizing the cattle of Conklin brought himself within these provisions. His lands were not enclosed but the cattle were doing damage. Neither did they come from adjoining lands by reason of Sipperley's failure to maintain a division fence. The contentions of petitioner to the contrary are without merit.

We further find that there was substantial compliance with the statutory procedure (Town Law, §§ 311–322). After the stay had been vacated in the earlier proceeding in Supreme Court notice was served that the Fence Viewers would view the damage on October 24. This was done on that date according to the unchallenged answer of the viewers. A hearing was scheduled on the same date to assess the damages of Sipperley, but

pursuant to agreement this hearing was adjourned to November 16 when Sipperley, Conklin and their respective witnesses testified at length.

Appellants contend that the award of the viewers included damages done by Conklin's cattle in the preceding year. This is incorrect. Sipperley attempted to recover such damage and offered proof thereof. The award, however, was limited to the submitted proof of damages sustained in 1960.

We consider next the claim of the intervenor that Farmers Home Administration, as the holder of a duly filed chattel mortgage upon the seized cattle, was the "owner" thereof and entitled to written notice of the detention of the cattle by Sipperley in accordance with the provisions of section 313 of the Town Law. We recognize that "As a general proposition, it is one of the characteristics of contractual or statutory liens against personal property that they are subordinate to all prior existing rights in the property. This makes such liens generally subordinate to the title of the holder of a prior chattel mortgage or conditional sale contract covering the property, provided the mortgage or contract is duly filed and refiled as required by law." (Eager, Chattel Mortgages and Conditional Sales, § 481.)

Some statutes granting liens to third parties have avoided this priority by providing that the lien attaches if the work is done at the request of the owner "whether such owner be a conditional vendee or a mortgagor remaining in possession or otherwise." (Lien Law, §§ 183, 184.) (Cf. *Motor Discount Corp.* v. *Scappy & Peck Auto Body,* 12 N Y 2d 227.)

But, as heretofore stated, the lien acquired by Sipperley was not a statutory lien but a right recognized by the rules of common law with the proceedings therefor regulated by statute. (*Cook* v. *Gregg,* 46 N. Y. 439, 443, *supra.*) "At common law the possessor of land had a right to seize and impound cattle found doing damage there, and to hold them until compensation for the damage sustained was made. Indeed, a mere entry by the livestock of one person upon the land of another constituted a wrong for which the animals could be distrained by the latter." (3 N. Y. Jur., Animals, § 34.)

The distinction between statutory and common-law liens insofar as priority is concerned, is stated in *Barrett Mfg. Co.* v. *Van Ronk* (212 N. Y. 90, 95) in the following language: "A lien of a livery stable keeper or an agistor is the creature of a statute, and it is one of the characteristics of contractual or statutory liens that they are subordinate to all prior existing rights in the property, while common-law liens which arise, upon considerations of justice and policy, by operation of law, attach,

as a general rule, to the property itself without any reference to ownership, and override all other rights in the property." (See, also, *Howard* v. *Burke,* 176 Iowa 123.)

The order should be affirmed.

WILLIAMS, P. J., GOLDMAN, HALPERN and HENRY, JJ., concur.

Order unanimously affirmed, with costs.